**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **VERNON HENRY,** | **)** | |
| | **)** | |
| **Petitioner/Defendant,** | **)** | |
| | **)** | **CIVIL NO. 03-CV-4024-JPG** |
| **vs.** | **)** | |
| | **)** | |
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Respondent/Plaintiff.** | **)** | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION
PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

COMES Now the United States of America, by Ronald J. Tenpas, United States Attorney for the Southern District of Illinois, and James M. Cutchin, Assistant United States Attorney, and in response to Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, states as follows:

## I. PROCEDURAL HISTORY

On August 14, 2001, a Federal Grand Jury sitting in the Southern District of Illinois returned a 9 Count Indictment.  Count 1 of the Indictment charged four individuals, including Petitioner Vernon Henry (hereinafter "Petitioner"), with conspiracy to distribute 50 grams or more of a mixture substance containing cocaine base, commonly referred to as "crack cocaine."

On November 8, 2001, Petitioner entered a plea of guilty to the offense alleged against him pursuant to a plea agreement with the Government.  A Presentence Investigation Report (hereinafter "PSR") was prepared.  The Sentencing Guideline calculations contained in the PSR were consistent with those contained in the plea agreement.

On February 7, 2002, Petitioner was sentenced by this Court to a total term of 135 months

imprisonment.  The Court entered its written Judgment in a Criminal Case on February 8, 2002.  The

Court then filed an Amended Judgement in a Criminal Case on February 13, 2002.

On February 6, 2003, the Government filed a Rule 35 motion to reduce Petitioner's sentence.

On February 7, 2003, Petitioner filed his Motion to Vacate, Set Aside, or Correct his sentence

pursuant to 28 U.S.C. § 2255.  On February 10, 2003, the Court ordered Petitioner's sentence to be

reduced pursuant to the Government's Rule 35, from a term of 135 months to 90 months.  On June

6, 2005, Petitioner filed an amendment to his 28 U.S.C. § 2255 motion.

## II. ARGUMENT

In his §2255 motion, Petitioner argues (1) his trial counsel was ineffective for various

reasons, (2) his plea agreement was not knowing and voluntary, and (3) the Government failed to

produce evidence in support of the charges.  Review of Petitioner's motion reveals that his assertions

of error are either waived or meritless, or some combination thereof.

### A.    Standards for §2255 Motions

Relief under § 2255 "is reserved for extraordinary situations."  Prewitt v. United States, 83

F.3d 812, 816, (7th Cir. 1996).  A criminal defendant may attack the validity of his sentence under

§2255 only if:

> the sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise subject
> to collateral attack.

Title 28, United States Code, § 2255.  However, "[a] § 2255 motion is neither a recapitulation of nor

a substitute for a direct appeal."  Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).

Therefore,

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

Prewitt, 83 F.3d at 816.

The limited standards under which a defendant's conviction and sentence are reviewed in a § 2255 motion are well established. In United States v. Belford, the Seventh Circuit held that

> there are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal [unless used as evidence of ineffective counsel]; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 defendant demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

975 F.2d 310, 313 (7th Cir. 1992) (emphasis added) (citations omitted). If a defendant's claims do not fall within one of these three categories, they are deemed waived. Id. However, as demonstrated in this case, by far the most common method by which habeas defendants attempt to circumvent the narrow parameters outlined in Belford is by couching their assertions of error in claims of ineffective assistance of counsel. Such claims, however, are even more narrowly reviewed.

To succeed on an ineffective assistance of counsel claim, petitioner must demonstrate: (1) a deficient performance by his attorney; and (2) prejudice from the allegedly deficient representation. Strickland v. Washington, 466 U.S. 668, 694 (1984); Valenzuela v. United States, 261 F.3d 694, 698 (7th Cir. 2001); Precin v. United States, 23 F.3d 1215, 1218 (7th Cir. 1994). To show a "deficient performance" by his attorney, petitioner bears the "heavy burden" of showing that his attorney's performance fell well outside the range of professionally competent representation. United States v. Moya-Gomez, 860 F.2d 706, 763-64 (7th Cir. 1988). The evaluation must be made "from counsel's perspective at the time [of the events] without the distorting effects of hindsight." United

3

States v. Sherwood, 770 F.2d 650, 655 (7th Cir. 1985).

The Strickland test is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." United States v. Williams, 106 F.3d 1362, 1367 (7th Cir.1997). There is a strong presumption that "decisions by counsel fall within a wide range of reasonable trial strategies." United States v. Lindsay, 157 F.3d 532, 535 (7th Cir.1998).

Because there is a strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance, the defendant faces a heavy burden in making out a winning ineffective assistance of counsel claim. United States v. Ruzzano, 247 F.3d 688, 696 (7th Cir. 2001); United States v. Trevino, 60 F.3d 333, 338 (7th Cir.1995). The court refrains from second guessing an attorney's tactical decisions. United States v. Godwin, 202 F.3d 969, 973 (7th Cir. 2000); United States v. Brooks, 125 F.3d 484, 496 (7th Cir.1997).

The court will make ' "every effort ... to eliminate the distorting effects of hindsight" ... and must apply a "heavy measure of deference to counsel's judgment." ' United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir.1990); Sullivan v. Fairman, 819 F.2d 1382, 1391 (7th Cir.1987) (quoting Strickland, 466 U.S. at 689, 691, 104 S.Ct. at 2065, 2066). Thus, the court resists the natural temptation of "Monday morning quarterback[ing]." United States v. Hall, 212 F.3d 1016 (7th Cir. 2000); Harris v. Reed, 894 F.2d 871, 877 (7th Cir.1990).

To satisfy the prejudice component, it is not enough to merely show that counsel committed errors that fell outside the wide range of effective representation. Rather, petitioner must show that the errors, if any, committed by his attorney rendered his trial and sentencing fundamentally unfair or the result unreliable. See Lockhart v. Fretwell, 506 U.S. 364 (1993); Valenzuela v. United States, 261 F.3d 694, 698 (7th Cir. 2001); Nichols v. United States, 75 F.3d 1137, 1141 (7th Cir. 1996). The

4

test is not merely whether the outcome would have been different because, as the Supreme Court has noted,

> an analysis focusing solely on mere outcome determination without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

Lockhart v. Fretwell, 506 U.S. at 369-70. As the Seventh Circuit recently noted, "in evaluating the impact of attorney errors . . . we must keep in mind that the 'ultimate objective [of our legal system is] that the guilty be convicted and the innocent go free.'" Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996) (quoting Evitts v. Lucey, 469 U.S. 387 (1985)).

Finally, in evaluating an ineffective assistance claim, "[a] court does not have to analyze both prongs of the Strickland test. A [petitioner's] failure to satisfy either prong is fatal to his claim." Ebbola v. United States, 8 F.3d 530, 533 (7th Cir. 1993) (citing Strickland, 466 U.S. at 697; United States v. Slaughter, 900 F.2d 1119, 1124 (7th Cir. 1990)). "As such, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" Id. (citing Strickland, 466 U.S. at 697).

**B. Standards for Evidentiary Hearing**

A federal prisoner does not have an automatic right to an evidentiary hearing under this statute, and a court may deny an evidentiary hearing "if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." Rodriguez v. United States, 286 F.3d 972, 986 (7th Cir. 2002); Oliver v. United States, 961 F.2d 1339, 1343 n. 5 (7th Cir.1992). In addition, when the judge who presided over the § 2255 motion also had previously presided over the defendant's trial

and sentencing, that judge is "uniquely suited to determine if a hearing [is] necessary." Rodriguez v. United States, 286 F.3d 972, 986 (7th Cir. 2002) (citing Patel v. United States, 19 F.3d 1231 (7th Cir.1994).

Where the "record conclusively demonstrates that a defendant is entitled to no relief on his §2255 motion to vacate, a full evidentiary hearing is not required." Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000); (quoting Politte v. United States, 852 F.2d 924, 931 (7th Cir.1988). Indeed, "a judge should dismiss the petition without a hearing where ... it 'plainly appears from the facts of the motion and any annexed exhibits and the prior proceedings in the case the movant is not entitled to relief.' " Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000). "[T]o allow indiscriminate hearings in federal post-conviction proceedings would eliminate the chief virtues of the justice system--speed, economy, and finality." Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000) (quoting United States v. Delgado, 936 F.2d 303, 309 (7th Cir.1991)).

A district court's decision not to grant an evidentiary hearing is reviewed for abuse of discretion. Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002); Prewitt, 83 F.3d at 820.

Applying these well-established standards to Petitioner's claims, it is evident that Petitioner's §2255 motion must be denied, and that the Court can make such a decision without need for an evidentiary hearing.

## C.  Issues Raised

### (1)    PETITIONER KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO FILE A 28 U.S.C. § 2255 MOTION.

Petitioner waived his right to any collateral attack of his sentence in the plea agreement.  Plea Agreement at 9.  Part II, paragraph 11 of the plea agreement into which the Government and

Petitioner entered provides:

> The Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the Defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3237 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. **The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255.**

Id. (Attached hereto as Exhibit 4) (emphasis added).

The Seventh Circuit has consistently upheld such waivers in plea agreements. See, e.g., United States v. Feichtinger, 105 F.3d 1188 (7th Cir. 1997); United States v. Ogden, 102 F.3d 887 (7th Cir. 1996); United States v. Wenger, 58 F.3d 280 (7th Cir. 1995), cert. denied, ___ U.S. ___, 116 S. Ct. 349 (1995); United States v. Schmidt, 47 F.3d 188, 190 (7th Cir. 1995) (such waiver provisions are enforceable so long " as the record clearly demonstrates that defendant knowingly and voluntarily entered in to the plea agreement."). "[W]aivers are enforceable as a general rule; the right to mount a collateral attach pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999)).

Petitioner's Rule 11 colloquy shows he knowingly and voluntarily entered into the plea agreement.

> THE COURT: Have you been provided a copy of the indictment, that is, the written charges against you, and **have you discussed the charge and the case in general with your attorney, Mr. Stern?**

THE DEFENDANT: **Yes, Your Honor**.

THE COURT: **Are you fully satisfied with the counsel, representation, and advice given to you in this case by Mr. Stern, your attorney?**

THE DEFENDANT: **Yes, sir.**

THE COURT: You have been charged in Count 1 of the superseding indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base in the form of crack cocaine in violation of federal law. **Do you understand what you're charged with in the superseding indictment?**

THE DEFENDANT: **Yes.**

THE COURT: Do you understand that the penalties that can be imposed, the maximum statutory penalty on Count 1 that can be imposed, is a term of imprisonment from 10 years to life, a fine of up to $4,000,000 and a term of supervised release up to 5 years. **Do you understand the penalties that could be imposed upon a plea or a finding of guilty?**

THE DEFENDANT: **Yes, Your Honor.**

Change of Plea Tr., <u>United States v. Henry</u>, 01-CR-40036 at 3-4 (attached here to as Attachment 1)

[hereinafter "Plea Tr."].

Moreover, Petitioner acknowledged that he was knowingly waiving his right to collaterally

attack his plea, and he did so of his own free and voluntary act.

MR. CUTCHIN [AUSA]:   . . .The plea agreement does anticipate that the government will recommend a three-level reduction for acceptance of responsibility, and **it does contain a wavier of appeal rights to both direct and collateral attack,** and it does contain the possibility of a Rule 35 if Mr. Henry continues to cooperate.

THE COURT:  **Are those the essential terms of the plea agreement as you understand them?**

THE DEFENDANT:  **Yes, Your Honor.**

THE COURT:  Have any threats or promises been made to you in an effort to induce you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: **Are you pleading guilty as your own free and voluntary act?**

THE DEFENDANT: **Yes.**

Plea Tr. at 6 (emphasis added).

Also, Petitioner agreed that the factual basis for the plea, which the Government gave in open court with Petitioner present, was correct. Plea Tr. at 8. Thus, as is clear from the above colloquy and the plain language of the plea agreement, Petitioner cannot show that he did not understand the terms of the plea agreement, including the waiver of appeal provision, or that he would not have signed the plea agreement but for his attorney's alleged deficiency. Ebbole v. United States, 8 F.3d 530, 534 (7th Cir. 1993), cert. denied, 510 U.S. 1182 (1994) (denying ineffective assistance where, based on the plain terms of the plea agreement and the colloquy at the plea hearing, defendant had a clear understanding of the terms of the agreement and the potential range of incarceration); United States v. Barker, 7 F.3d 629, 633-34 (7th Cir. 1993), cert. denied, 510 U.S. 1099 (1994) (a properly conducted Rule 11 hearing can cure a defendant's misunderstanding or confusion, even if the source of that confusion is the defendant's own attorney).

By his own admission, Petitioner understood the terms of the plea agreement at the time he pled guilty and did so of his own free and voluntary act. Accordingly, claims regarding his guilty plea and sentence have been effectively waived.

As set forth above, Petitioner knowingly waived his right to collaterally attack his sentence in this case or the manner in which it was calculated. Petitioner's assertions in Grounds 5 and 6 of the petition both relate to defendant's sentence and/or the manner in which it was calculated.

Accordingly, those assertions were waived.

Moreover, Grounds 2, 3, and 4, even if considered attempts to assert constitutional claims, are not cognizable under the strictures of <u>Belford</u> because they were not raised on direct appeal and petitioner has made no showing of cause for failing to do so or actual prejudice resulting from that failure. Accordingly, those claims have also been waived.

As explained below, however, even if the Court were to consider the substance of these claims, they are without merit.

### (2)    PETITIONER WAS MADE AWARE OF THE CHARGES AGAINST HIM BY COUNSEL AND BY THE COURT.

Petitioner asserts his trial counsel, James Stern, was ineffective by failing to explain the charges against him. Pet'r 28 .U.S.C. § 2255 Mo. at 4. This claim is without merit.

As the Seventh Circuit has made clear:

> Rule 11's provisions specifically seek to ensure the entry of a plea is not a meaningless act. Great care is taken when accepting pleas under Rule 11. Plea agreements are placed on the record, the voluntariness and accuracy of the plea is ascertained, and detailed advice is provided to the defendant concerning his rights and the consequences of his plea as well as a determination that [the] defendant understands these matters.

<u>United States v. Ellison</u>, 835 F.2d 687, 693 (7th Cir. 1987). Because courts "must be able to rely upon this evidence of understanding and acquiescence, where a district court carefully leads a defendant "through a battery of questions concerning voluntariness," as this Court did, the record carries a "presumption of verity." <u>Barker</u>, 7 F.3d at 634 n.5; <u>see also</u> <u>United States v. Trussel</u>, 961 F.2d 685, 689 (7th Cir.1992); <u>United States v. Lawson</u>, 947 F.2d 849, 852 (7th Cir. 1991) (citing <u>Ellison</u>, 835 F.2d at 693. For this reason, "the representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceeding." Key v. United States, 806 F.2d 133, 136 (7th Cir.1986) (quoting

Thompson v. Wainwright, 787 F.2d 1447, 1460 (11th Cir.1986)).

      In the instant case, the record indicates counsel did explain the charges against Petitioner, and

Petitioner provides no facts which indicate otherwise. While Petitioner was under oath during his

change of plea hearing, the following exchange occurred between the Court and Petitioner:

> THE COURT: Have you been provided a copy of the indictment, that is, the written charges against you, and **have you discussed the charge and the case in general with your attorney, Mr. Stern?**
>
> THE DEFENDANT: **Yes, Your Honor**.
>
> THE COURT: **Are you fully satisfied with the counsel, representation, and advice given to you in this case by Mr. Stern, your attorney?**
>
> THE DEFENDANT: **Yes, sir.**
>
> THE COURT: You have been charged in Count 1 of the superseding indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base in the form of crack cocaine in violation of federal law. **Do you understand what you're charged with in the superseding indictment?**
>
> THE DEFENDANT: **Yes.**
>
> THE COURT: Do you understand that the penalties that can be imposed, the maximum statutory penalty on Count 1 that can be imposed, is a term of imprisonment from 10 years to life, a fine of up to $4,000,000 and a term of supervised release up to 5 years. **Do you understand the penalties that could be imposed upon a plea or a finding of guilty?**
>
> THE DEFENDANT: **Yes, Your Honor.**

Change of Plea Tr. at 3-4.

      Thus, the transcript indicates Petitioner was made aware of the charges against him and the

possible penalties he faced not only by counsel but by the Court as well. Therefore, based on his

own admission, counsel **did** inform Petitioner of the charges against him. Further, no prejudice is

present because even if counsel failed to inform Petitioner of the charges, the Court **did** inform Petitioner of the charges.   United States v. Barker, 7 F.3d 629, 633-34 (7th Cir. 1993), cert. denied, 510 U.S. 1099 (1994) (a properly conducted Rule 11 hearing can cure a defendant's misunderstanding or confusion, even if the source of that confusion is the defendant's own attorney).

In addition, Petitioner acknowledged in his plea agreement he understood the nature of the charges against him.  Plea Agreement at 3.

> 9.      Defendant **acknowledges that he has been advised and does fully understand the following:**
>
> (a)      **the nature of the charges to which the plea is offered**, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; . . . .

Id.  (emphasis added).

Based on the Rule 11 colloquy, Petitioner's representations at that hearing, and his plea agreement, it is evident that Petitioner's decision to plead guilty was ultimately his own and that he did so having adequate understanding of the charges against  him and the consequences of his decision to enter pleas of guilty.

For the above reasons, Petitioner's claim in this regard has no merit and should be denied.

**(3)    PETITIONER NEVER REQUESTED TO WITHDRAW HIS GUILTY PLEA.**

Petitioner next claims counsel was ineffective because counsel never asked the Court to withdraw his guilty plea.  Pet'r 28 .U.S.C. § 2255 Mo. at 4.   This claim has no merit.

Petitioner states "[a] few days after the plea hearing I called Mr. Stern and asked for a change of plea - he said he would see what he could do."  Pet'r 28 U.S.C. § 2255 Mo. at 3.  However, in a

letter written by James Stern, Petitioner's counsel, Mr. Stern states, **"[Petitioner] never requested that his plea be withdrawn."**  See attached Government Exhibit 2 ¶ 1 (emphasis added).  Mr. Stern is an attorney who practices regularly before this court and Government counsel is unaware of any reason the Court would have to disbelieve assertion in this regard.  Moreover, Mr. Stern's assertion is corroborated by the fact that petitioner did not advise the Court at time of sentencing that he wanted to withdraw his plea or was otherwise unsatisfied with his attorney.[1]  Had petitioner been so adamant in desiring to do so, it is evident that he would have so advised the Court.  In support of his allegation, petitioner offers only his self serving assertion.  It is evident that petitioner never advised his attorney that he wanted to withdraw his plea and, in fact, did not desire to do so until after he began serving his sentence.  Thus, counsel cannot be deemed deficient for failing to file such a motion.

Moreover, even if petitioner had made such a request, in light of the detailed Rule 11 colloquy set forth above, petitioner cannot show any prejudice as he is required to do.

> " [A] defendant who files a motion to withdraw his plea on the ground that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion.  See Ellison, 835 F.2d at 693. **" 'The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing.' "** United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995) (*quoting* United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993)).

Further, if a defendant fails to offer "any substantial evidence that impugns the validity of the [guilty] plea," then the allegations in support of withdrawn plea "are mere conclusions or are inherently unreliable," and  may be denied without a hearing.  United States v. Suggs, 374 F.3d 508, 520 (7th

---

[1]    The sentencing hearing as not been transcribed.  Counsel is relying on his memory and notes of the sentencing hearing.

Cir. 2004) (citing <u>United States v. Redig</u>, 27 F.3d 277, 280 (7th Cir. 1994)). Thus, cannot establish that such a motion would have been granted and, accordingly, cannot establish prejudice from the alleged deficient performance.  Petitioner's claim has no merit.

### (4)    PETITIONER RECEIVED A FAVORABLE PLEA AGREEMENT.

Petitioner alleges counsel was ineffective because "counsel made no effort to plea bargain - he took the first thing they offered."  This claim is without merit.

In his letter, counsel addressed this issue:

> As to the allegation that I took the first offer, the defendant received a low end recommendation, he received three levels off for acceptance, he received a Rule 35 taking him from 135 months to ninety months and he also was designated a "minor participant" decreasing him an additional two levels.  Considering the defendant confessed and there were at least five proffers against him, I believe he got a good deal.

Government Exhibit 2 ¶ 1.

Moreover, Petitioner cites no evidence establishing that the Government was willing to offer, or would have offered, a better plea agreement than the one he received.  The one he did received is the standard plea agreement used the Government in this district.  Petitioner has alleged no facts to demonstrating that he would have received any special treatment from the Government through its deviation from that standard agreement which this Court has seen in hundreds of cases.

Finally, it should be noted that petitioner received the benefit of his bargain under the terms of the plea agreement.  The Government's motion to reduce petitioner's sentence was filed on February 6, 2003 – the day before petitioner's petition was received and filed by the clerk.  This Court granted the motion and reduced petitioner's sentence to 90 months on February 10th.

It is clear that petitioner has failed to demonstrate deficient performance by counsel in the negotiation of the plea agreement. He has also failed to establish any prejudice whatsoever. Petitioner's claim is without merit.

**(5)    PETITIONER KNOWINGLY AND VOLUNTARILY ENTERED A PLEA OF GUILTY.**

Petitioner claims his plea of guilty was "with no understanding of [the] charges or consequences of [a] plea." Pet'r 28 .U.S.C. § 2255 Mo. at 4. This claim is essential identical to his claim, addressed above, that his attorney failed to advise him of the nature of the charges. This claim has no merit.

First, this claim, which is not cast in terms of ineffective assistance of counsel, was waived by his failure to assert it on direct appeal and by his failure to establish both cause and prejudice from that failure. Belford.

Morever, even if the merits of the claim were reached, the allegation would fail. Again, the record created by questions during a plea hearing are "accorded ... a 'presumption of verity.'" United States v. Lawson, 947 F.2d 849, 852 (7th Cir. 1991) (citing United States v. Ellison, 835 F.2d 687, 693 (7th Cir.1987) (quoting Key v. United States, 806 F.2d 133, 136 (7th Cir.1986)).

Under oath, Petitioner said he understood the charges against him and the penalties that could be imposed with a plea of guilty. During Petitioner's change of plea hearing the following occurred:

THE COURT:  You have been charged in Count 1 of the superseding indictment with conspiracy to distribute and posses with intent to distribute 50 grams or more of cocaine base in the form of crack cocaine in violation of federal law. **Do you understand what you're charged with in the superseding indictment?**

THE DEFENDANT: **Yes.**

THE COURT: **Do you have any questions with regard to that charge?**

15

THE DEFENDANT: **No, sir.**

THE COURT: Do you understand that the penalties that can be imposed, the maximum statutory penalty on Count 1 that can be imposed, is a term of imprisonment from 10 years to life, a fine of up to $4,000,000, and a term of supervised release up to 5 years. **Do you understand the penalties that could be imposed upon a plea or a finding of guilty?**

THE DEFENDANT: **Yes, Your Honor.**

Plea Tr. at 3-4 (emphasis added). As the transcript shows, Petitioner knew the charges against him and the penalties he faced if he was found guilty.

In addition, Petitioner acknowledged in his plea agreement he understood the nature of the charges against him. Plea Agreement at 3.

9.     **Defendant acknowledges that he has been advised and does fully understand the following:**

(a)     **the nature of the charges to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; . . . .**

Id. (emphasis added).

Further, Petitioner indicated during the plea hearing that his guilty plea was voluntary:

THE COURT: Have any threats or promises been made to you in an effort to induce you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: **Are you pleading guilty as your own free and voluntary act?**

THE DEFENDANT: **Yes.**

Plea Tr. at 8 (emphasis added). Therefore, by his own admission, Petitioner understood the charges against him and the consequences thereof.

16

### (6)    PETITIONER KNEW FROM WHERE HIS RELEVANT CONDUCT WAS DERIVED WHEN ENTERED HIS PLEA OF GUILTY.

Petitioner further argues his guilty plea was not "knowing" because he did not know at the time of the plea where his relevant conduct derived from.  Pet'r 18 U.S.C. § 2255 Mo. at 4. Petitioner claims he learned where his relevant conduct came from after having pled guilty - when he received his PSR.  Id.  This claim is without merit.

First, the Government followed its usual "open file" policy with regard to discovery in this case and provided petitioner with all investigative reports. See Discovery Letter (Attached hereto as Exhibit 3.  Secondly, petitioner read and signed the Stipulation of Facts that stated Petitioner was involved in a conspiracy to distribute crack cocaine with, but not limited to, "Keith Acree, and codefendants Monte Gardner, Duane Jones, Dimarcus Tabb, Bobby Tucker, and Darius Johnson" before he ever pled.  Stipulation of Facts at 1 ¶ 1 (attached hereto as exhibit 5).  Thirdly, the plea agreement  signed by Petitioner stated:

> 3.    The Defendant and the Government agree that the total quantity of crack cocain constituting this Defendant's **relevant conduct is between 500 grams and 1.5 kilograms, thereby creating an initial Guideline Offense Level of 36.**  This amount is based upon total amounts of crack cocaine distributed by others in the conspiracy which, according to Defendant's statement to law enforcement officer on May 22, 2001, were foreseeable to him.  Plea Agreement at 7 (emphasis added).

Likewise, under oath, Petitioner agreed with the factual basis read by the Government during his plea hearing that stated Petitioner was a runner who would "obtain crack cocaine customers and bring them to members of the conspiracy to purchase crack cocaine."  Plea Tr. at 7.  Therefore, Petitioner was well aware prior to the PSR, what his relevant conduct was and from where it was derived.

In addition, Petitioner was aware he was bound by his guilty plea, regardless of what the PSR

17

determined his relevant conduct to be. Plea Tr. at 7.

> THE COURT: Do you understand this Court cannot determine what guideline applies to your case until it has received and reviewed a Presentence Investigation Report? Under some circumstances this Court can impose a sentence that is greater or lesser than called for by the guidelines. If my sentence of you is more severe than what you expect, you will still be bound by your plea of guilty and will have no right to withdraw it. Do you understand that?

> THE DEFENDANT: Yes, Your Honor.

Id.

For the reasons stated above, Petitioner's claim is without merit and no evidentiary hearing is required.

### (7)    SENTENCING GUIDELINE CALCULATIONS CANNOT BE CHALLENGED IN A 2255 MOTION.

Petitioner claims counsel was ineffective by failing to object to the Government's calculation of his relevant conduct. Pet'r 18 U.S.C. § 2255 Mo. at 5. Specifically, he claims the Government should not have used Bobby Tucker's statement regarding the drug buys but rather Monte Gardner's statement. Id.

In reality, petitioner's claim is one challenging the Court's relevant conduct calculations under the Sentencing Guidelines. Such a challenge is not cognizable in a 2255 motion. Scott v. United States, 997 F.2d 340 (7th Cir.1993)

Moreover, even if simply casting it in terms of ineffective assistance of counsel some made it cognizable, petitioner has failed to establish that counsel was deficient for not objecting to the calculations or that prejudice resulted. As the Seventh Circuit, and Guidelines themselves, has made clear, "[w]hen choosing the base offense level in a narcotics case, the district court must take into consideration not only the drug amounts involved in the offense of conviction, but any 'that were

part of the same course of conduct or common scheme or plan as the offense of conviction.'" <u>United States v. Pigee</u>, 197 F.3d 879, 889 (7th Cir. 1999) (citations omitted).  "[A] defendant in a drug conspiracy is responsible not only for the drugs with which he was directly involved but also for any drugs reasonably foreseeable in connection with the criminal conduct that he agreed to undertake in furtherance of the conspiracy while he was a member of the conspiracy . . . ." <u>Gray-Bey v. United States</u>, 156 F.3d 733, 740 (7th Cir. 1998) (citing <u>Nichols v. United States</u>, 75 F.3d 1137, 1141 (7th Cir. 1996)); <u>see also</u> <u>Pinkerton v. United States</u>, 328 U.S. 640, 646 (1946).

Here, Petitioner fails to give a scintilla of evidence indicating he was responsible for less 1,012.56 grams of crack cocaine.  <u>See</u> <u>Grey-Bey</u>, 156 F.3d at 742.  He admitted that he was aware of the amounts of crack cocaine being dealt by his codefendants, including Bobby Tucker, and that those amounts totaled between 500 grams and 1.5 kilograms.  Plea Agreement at 7; Plea Tr. at 5. The PSR's findings were consistent with petitioner's own factual stipulation.  PSR at 11.

Petitioner simply cannot establish deficient performance on the part of his attorney for failing to object to drug quantities that fell within the range to which petitioner's himself admitted and which was calculated using statements made by persons with whom petitioner admitted to being involved in a conspiracy to distribute crack cocaine.

For the reasons above, Petitioner's claim is not cognizable and, further, has no merit.

### (8)    A FACTUAL BASIS EXISTED FOR THE CHARGE AGAINST PETITIONER.

Petitioner claims "[t]here was no factual basis for the charge of possession with intent to distribute."  Pet'r 18 U.S.C. § 2255 Mo. at 5.  This claim has no merit.

First, petitioner was charged is <u>conspiracy</u> to distribute and possess with intent to distribute

19

crack cocaine rather than a substantive count of possession with intent to distribute. See Indictment.
The facts admitted by him in the stipulation of facts and at the plea hearing were more than sufficient
to establish a factual basis for his guilty plea.

"[T]he representations of the defendant [at a plea hearing] as well as any findings made by
the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding."
Key, 806 F.2d at 137 (7th Cir. 1986) (quoting Thompson v. Wainwright, 787 F.2d 1447, 1460 (11th
Cir.1986)).  At the change of plea hearing Petitioner was read the factual basis and agreed, under
oath, to its contents.  Plea Tr. at 8-9.

> THE COURT: Factual basis.
>
> MR. CUTCHIN [AUSA]: If this case were to proceed to trial, the government would
> present evidence through the testimony and exhibits and would prove that beginning
> approximately in the summer of 2000 and continuing until May of this year [2001],
> the defendant became involved with others, including a defendant in a related case,
> Keith Acree, as well as co-defendants in this case, Monte Gardner, Duane Jones,
> Dimarcus Tabb, Bobby Tucker, and Darius Johnson, in the distribution of crack
> cocaine in Pulaski County, Illinois.
> The defendant's role in the conspiracy was essentially that of a runner where he
> would obtain crack cocaine customers and bring them to members of the conspiracy
> to purchase crack cocaine.  The defendant would in return receive a portion of that
> crack cocaine as payment.
> He also received crack cocaine from members of the conspiracy for performing other
> jobs.  Most all of the distributions which occurred in the scope of this conspiracy
> occurred at locations at 513 and 515 Pearl Street in Mounds City, Illinois.  On May
> 22nd of this year, the defendant was interviewed by the Cairo Public Housing Drug
> Task Force.  After being advised of his rights, he admitted to being involved as stated
> in the stipulation of facts.
>
> THE COURT: **Is the factual basis essentially correct?**
>
> THE DEFENDANT: **Yes, sir.**

Plea Tr. at 7-8 (emphasis added).  Petitioner then pled guilty to the charges regarding the factual

basis.  Id.  After hearing the factual basis and receiving the affirmative response from petitioner,

20

the Court stated:

> **The Court finds that a factual basis exists.  That the defendant has knowingly entered into a plea of guilty to the indictment,** and the Court hereby adjudges the defendant guilty of that offense.

Plea Tr. at 8-9 (emphasis added).

By his own admission, a factual basis existed; thus, Petitioner's claim is without merit.

### (9)    PETITIONER WAS NOT A "MINIMAL" PARTICIPANT.

Petitioner claims his classification should have been a "minimal" as opposed to a "minor" participant.  This claim is without merit.

Again, this claim is one challenging the Court's calculation of his sentence under the Sentencing Guidelines.  Such a challenge is not cognizable in a 2255 motion. Scott v. United States, 997 F.2d 340 (7th Cir.1993).

Moreover, even if it were, "the commentary to the Guidelines states that the reduction for a minimal participant is to be used infrequently and provides as an example an individual who serves as a courier for a single illegal transaction involving a small amount of drugs." Precin v. United States, 23 F.3d 1215, 1219 (7th Cir. 1994) (citing U.S.S.G. § 3B1.2 application note 2)). As the PSR states "[Petitioner] had **an active daily role** in distributing crack cocaine for all members of this conspiracy . . . ."  PSR at 11(emphasis added).  Under the Guidelines, Petitioner's participation was not "minimal."

For the above reasons, Petitioner's claim has no merit and counsel was not deficient for failing to argue that he was.

21

**(10)    EVIDENCE EXISTED, PRIOR TO PETITIONER'S INCRIMINATING STATEMENT, THAT SHOWED PETITIONER WAS INVOLVED IN THE DISTRIBUTION CONSPIRACY.**

Petitioner argues prior to being seized, detained, and threatened repeatedly, there was no evidence that showed that he was involved in drug distribution.  Pet'r Am. 28 U.S.C. § 2255 Mo. at 4.[2]

The Government fails to comprehend how this claim could be cognizable in a 2255 motion or how to address it other than to point out, using the PSR, that it simply is not true.

On May 15, 2001, Catrina Mackins gave a voluntary statement to authorities giving Petitioner's name as a "runner" for a crack cocaine conspiracy.  PSR at 8 ¶ 30.  On May 15, 2001, Barry Posey stated to authorities that Petitioner was a "runner."  Id. at ¶ 31.  On May 16, 2001, Darius Johnson stated Petitioner was a "runner."  Id. at 10 ¶ 35.  Also on May 16, 2001, Keith D. Acree stated Petitioner bought crack cocaine from him and Petitioner also drove Acree to Charleston, Missouri to purchase crack cocaine.  Id. at ¶ 36.  Acree further stated Petitioner would "help him sell crack cocaine in Mound City, Illinois . . . ."  Id.

Therefore, evidence did exist that Petitioner was involved in the conspiracy prior to him making an incriminating statement.

**(11)    BY HIS OWN ADMISSION, PETITIONER WAS READ HIS <u>MIRANDA</u> RIGHTS AND SIGNED A WRITTEN WAIVER.**

Petitioner asserts counsel failed to make the Government prove by a preponderance of the

---

[2]        Petitioner incorrectly asserts officers detained him on May 16, 2001.  Pet'r Am. 28 U.S.C. §2255 Mo. at 3. As noted in the PSR, the Stipulation of Facts, and the Plea Agreement, the only interview given by defendant occurred on May 22, 2001.  Even assuming for the sake of argument that some other interview of defendant had occurred (for which defendant offers no evidence), it is evident that neither the Court nor the Government relied on such an interview in determining defendant's involvement in this offense or the sentence imposed.

evidence that he waived his <u>Miranda</u> rights.  Pet'r Am. 28 U.S.C. § 2255 Mo. at 4.  This claim has no merit.

Petitioner admitted he waived his <u>Miranda</u> rights.  The Stipulation of Facts states:

On May 22, 2001, **after being advised of his constitutional right and executing a written waiver thereof, defendant was interviewed and admitted his involvement in the distribution of crack cocaine** as set for in paragraph 1.  Stipulation of Facts at 2 ¶ 2 (emphasis added).

Further, Petitioner was read the factual basis during his plea hearing which stated:

On May 22nd of this year [2001], the defendant was interviewed by the Cairo Public Housing Drug Task Force.  **After being advised of his rights, he admitted to being involved as stated in the stipulation of facts**.

Plea Tr. at 8 (emphasis added). Petitioner then agreed, under oath, that the factual basis was correct.  <u>Id</u>.

Therefore, his counsel cannot be deemed deficient for failing to challenge the admissibility of petitioner's statement where petitioner himself admitted he was read and then waived his <u>Miranda</u> rights.  Indeed, it would have been frivolous for counsel to raise such an issue.  Further, petitioner cannot be heard to complain that the Government failed to prove that he waived his <u>Miranda</u> rights where, again, petitioner specifically admitted that such advisement had occurred.

For the above reasons, Petitioner claim has no merit.

**(12)    PETITIONER AGREED WITH COUNSEL'S STRATEGIC CHOICE NO TO FILE A MOTION TO SUPPRESS PETITIONER'S INCRIMINATING STATEMENTS.**

Petitioner claims his counsel was ineffective "by failing to contest whether there was probable cause for [him] to be seized, detained, threatened, and interrogated for hours without an arrest warrant."  Pet'r Am. 28 U.S.C. § 2255 Mo. at 4.  This claim has no merit.

23

"Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice." United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005). "If an attorney's decision was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel." Id. (citing Winters v. Miller, 274 F.3d 1161, 1166 (7th Cir. 2001). The Seventh Circuit has held that "[w]hen the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, [it has] required that the defendant prove the motion was meritorious." Id. (citing Owens v. United States, 387 F.3d 607, 610 (7th Cir. 2004); United States v. Stewart, 388 F.3d 1079, 1084 (7th Cir. 2004).

In the instant case, Petitioner's counsel made a strategic choice not file a motion to have Petitioner's statements suppressed, and Petitioner agreed with that choice. Counsel's letter discusses this issue:

> The defendant and I discussed filing a suppression motion in his statement. **I explained the he was risking losing acceptance and a plea deal and if he testified and lied, he would be risking obstructing of justice and perjury. After consideration, the defendant chose not to proceed with the motion to suppress.** He had no witnesses.

Government Exhibit 1 ¶ 2. Therefore, counsel's performance cannot be deemed deficient because he made a strategic choice not to file a motion to suppress; moreover, Petitioner agreed with that decision.

Further, Petitioner fails to establish prejudice because, as illustrated, that was the correct strategic choice. As noted in Mr. Stern's letter,

> defendant received a low end recommendation, he received three levels off for acceptance, he received a Rule 35 taking him from 135 months to ninety months and he also was designated a "minor participant" decreasing him an addition two levels. Considering the defendant confessed and there were at least five proffers against him, I believe he got a good deal.

Exhibit 1 ¶ 1.

For the above reasons, Petitioner's claim has no merit.

## **CONCLUSION**

The Government believes that it has addressed all the many related issues raised in the Petitioner's *pro se* § 2255 motion.  However, if it inadvertently missed an issue or failed to adequately address an issue, the Government would request the Court's indulgence and allow the Government to further respond.

Because, petitioner's claims are either waived, non-cognizable, or meritless, or some combination thereof, the Government respectfully requests that this Court deny the Petitioner's §2255 motion.

**Respectfully submitted,**

**UNITED STATES OF AMERICA**

**Ronald J. Tenpas**
**United States Attorney**

**/S/ James M. Cutchin**
**JAMES M. CUTCHIN**
**Assistant United States Attorney**
**402 West Main, Suite 2A**
**Benton, IL  62812**
**Phone: (618) 439-3808**
**Fax:  (618) 439-2401**
**jim.cutchin@usdoj.gov**

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2005, I electronically filed the following document:

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION**
**PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR**
**<u>CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY</u>**

with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

None

and I hereby certify that on August 5, 2005, I mailed by United States Postal Service, the document(s) to the following non-registered participants:

Vernon Henry
Inmate No. 05334-025
Federal Medical Center - Lexington
3301 Leestown Road
Lexington, KY 40511

                          Respectfully submitted,


                          RONALD J. TENPAS

                          United States Attorney


                          s/James M. Cutchin
                          JAMES M. CUTCHIN

26